UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MAXUM CASUALTY INSURANCE COMPANY, *et al.*,<br><br>Defendant. | Case No. 1:17-cv-0423 LJO-BAM<br><br>**ORDER REGARDING DEFENDANT'S MOTION TO TRANSFER ACTION TO CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404**<br><br>(Doc. 5) |

Presently before the Court is Defendant Maxum Casualty Insurance Company's ("Maxum" or "Defendant") motion to transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404. (Doc. 5). Plaintiff Lexington Insurance Company ("Lexington" or "Plaintiff") opposed the motion on May 26, 2017 (Doc. 9-11), and Maxum replied on June 2, 2017. (Doc. 12). The Court took the matter under submission without oral argument pursuant to Local Rule 230(g), and vacated the hearing set for June 9, 2017. Having considered the moving, opposition and reply papers, Maxum's motion to transfer this action to the Central District of California shall be GRANTED.

///

///

**BACKGROUND**

Plaintiff Lexington Insurance Company ("Plaintiff") filed this action on February 14, 2017, in the Fresno County Superior Court against Defendant Maxum. On March 22, 2017, Maxum filed an answer in the Fresno County Superior Court. Thereafter, on March 23, 2017, Maxum removed the action to this Court on the basis of diversity. (Doc. 1).

Plaintiff Lexington, an excess liability insurer, is incorporated in Delaware with its principal place of business in Boston, Massachusetts. Defendant Maxum Casualty Insurance Company, a primary insurer, is a Connecticut Corporation[1] with its principal place of business in Atlanta, Georgia. (Doc. 1). This insurance coverage case claims that primary insurer Maxum unreasonably failed to settle an underlying wrongful death case—*Clark v. Castillo* ("Clark Case")—which involved a fatal motor vehicle collision occurring in Riverside County, California. Plaintiff Lexington alleges that Defendant's failure to settle that case within its policy limits resulted in a jury award in excess of the primary policy limits.

The parties do not dispute that, based on the current allegations of Plaintiff's Complaint, no party or fact witness resides in the Eastern District of California, and no relevant events occurred in this district.

<u>Plaintiff's Allegations</u>

In the complaint, Plaintiff alleges that Maxum accepted the defense of its insured Omar Castillo ("Castillo") in the *Clark v. Castillo* action in Riverside County Superior Court, case no. INC 1204305. Plaintiff's Complaint ("Compl."), ¶ 9, 13. The underlying action was brought by the family and heirs of Ernest Clark who was struck and killed by a tractor trailer operated by Castillo on March 13, 2012 while Castillo was hauling a trailer owned by Gardner Trucking, Inc. Compl. ¶ 11.

Castillo was insured under a Commercial Auto Policy issued by Maxum to Omar Castillo DBA Omar Castillo Trucking, policy no. TRK 60177898-01, with a $1,000,000 per occurrence

---

[1] There appears to be some dispute as to whether Defendant Maxum is incorporated in Delaware or Connecticut. (Docs. 1, 11). The Court takes no position on this dispute as it is irrelevant for a determination of the instant motion.

2

policy limit. Compl. ¶ 6. Castillo was also insured under a Commercial Auto Policy issued by National Interstate Insurance Company ("National Interstate") to Gardner Trucking, with a per occurrence limit of $1,000,000. Compl. ¶ 7. National Interstate was notified of the underlying action and took a position as an excess insurer to Castillo above Maxum's position and monitored that action on an ongoing basis. Compl. ¶ 15.

Plaintiff Lexington also insured Castillo under a Follow Form Excess Liability policy issued to Gardner Trucking, policy no. 048883243, with a per occurrence limit of $10,000,000. Lexington was not notified of the underlying action until after a judgment was entered against Castillo. Compl. ¶ 8.

According to Plaintiff Lexington, as primary insurer, Defendant Maxum controlled the defense of and responded to settlement demands from the plaintiffs in the underlying action. Compl. ¶ 15. Initial reports from Maxum's selected defense counsel indicated a potentially favorable outcome; however as the action proceeded several adverse factual discoveries were made about the veracity of Castillo's statements. Compl. ¶ 16. During discovery, the underlying Plaintiffs learned that Castillo had falsified logbook entries regarding rest or sleep breaks which were contradicted by the black box of the truck Castillo was driving. Compl. ¶ 17. It was also discovered that Castillo made untruthful statements about talking on the phone with his mistress at the time of the accident. Compl. ¶ 19.

On three occasions during the underlying action, Maxum was offered an opportunity to settle the Clark case for its policy limits. Compl. ¶¶ 34-36. However, each time, Maxum refused to do so. Compl. ¶ 37. The matter ultimately proceeded to trial and a judgment of $4,440,000.00 was entered against Castillo. Compl. ¶ 32. Lexington paid $2,440,000.00 to the underlying plaintiffs to protect Castillo and reserved rights to seek reimbursement from Maxum for improper handling of the underlying action. Compl. ¶ 42. Lexington alleges that Maxum's refusal to settle the underlying action within its policy limits resulted in damage to Plaintiff Lexington of $2,440,000.00 which would not have been paid but for Maxum's failures to accept reasonable settlement offers and other improper handling. Compl. ¶ 46-47.

Plaintiff Lexington brings a single claim for equitable subrogation against Defendant

Maxum for relief including: damages according to proof, reasonable attorney fees, prejudgment interest according to proof, costs of this suit, and other relief as the Court deems just and proper.

**LEGAL STANDARD**

Change of venue is authorized under 28 U.S.C. § 1404(a), which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense ...' " *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805 (1964) (citation omitted).

An action may be transferred to another court if: (1) that court is one where the action might have been brought; (2) the transfer serves the convenience of the parties and witnesses; and (3) the transfer will promote the interests of justice. *E & J Gallo Winery v. F. & P. S.p.A.*, 899 F.Supp. 465, 466 (E.D. Cal. 1994) (citing 28 U.S.C. § 1404(a)). The Ninth Circuit has identified additional factors that a court may consider when deciding a motion to transfer venue, including:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and, (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). A court also may consider "the administrative difficulties flowing from court congestion . . . [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

A plaintiff's choice of forum is accorded substantial weight in proceedings under 28 U.S.C. § 1404(a), and the burden is upon the moving party to show that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

Nevertheless, a district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones*, 211 F.3d at 498 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

**DISCUSSION**

By the instant motion, Defendant Maxum contends that this insurance coverage action should be transferred to the Central District of California, where most of the events giving rise to Plaintiff's claim occurred, for the convenience of the parties and witnesses and in the interests of justice pursuant to 28 U.S.C. § 1404. Plaintiff Lexington counters that its choice of venue should be afforded substantial deference and not disturbed based on convenience to Maxum and its counsel. Having considered the parties' positions and the relevant legal authority, the Court finds that Maxum has met its burden to show that transfer is appropriate.

**A. Action Could Have Been Brought in Central District**

As a threshold matter, transfer under Section 1404(a) is only appropriate if the action could have been brought in the transferee venue. See 28 U.S.C. § 1404(a). Venue is proper in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(b)(2). Here, the subject collision occurred in Riverside County, California, which is located within the Central District of California. The subsequent trial proceeded in the Riverside County Superior Court, located in the Central District. Compl. ¶ 9. Maxum retained defense counsel located in the city of Los Angeles and Orange County to defend its insured in that case. Compl. ¶ 13. Relatedly, most of the settlement communications concerning the underlying case happened in the Central District. Declaration of Zakiya Glass ("Glass Decl."), ¶¶ 2, 4, Doc. 5-2, Ex. E. Thus, a substantial part of the events giving rise to Plaintiff's claim happened in the Central District of California and this action could have been brought in the Central District of California. See 28 U.S.C. § 1391(b) ("A civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.").

5

### B. The Motion is not Premature

Plaintiff Lexington argues that Defendant's motion is premature and therefore this Court should decline to consider the question of transfer until after the litigation has significantly progressed. *See A.C. Nielson Company v. Hoffman*, 270 F.2d 693, 696 (7th Cir. 1959) ("it is unwise for a [judge] to enter an order of transfer in the early stages of a case before it can be determined just what the issues in that case are going to be."); *Mobil Oil Corp. v. W. R. Grace & Co.*, 334 F. Supp. 117, 126 (S.D. Tex. 1971) (a decision regarding transfer of an action "is preferable in the later stages of a case" so that the Court may "visualize with more clarity the factors implicit in its determinations).

Plaintiff's prematurity argument is unavailing for two reasons. First, the authority relied on by Plaintiff is non-binding and highly distinguishable. In *A.C. Nielson*, a Seventh Circuit case, the Court found it "unwise" to transfer that patent infringement action in the early stages of the case because at the time of transfer "there was a possibility that 65 claims of 4 patents might be in issue." 270 F.2d at 696. However, "the probability was that after pre-trial discovery had been completed, plaintiff would decide to try the case relying on a far less number." *Id.* It was therefore difficult for that Court to consider the roster of potentially inconvenienced witnesses. Here, there is no dispute that the events giving rise to this action occurred squarely within the Central District. There is further no suggestion that discovery could reveal that a party, witness, or otherwise relevant event could be connected to the Eastern District. Since the facts in this case do not come within *A.C. Nielsen*, this Court is not persuaded by the out-of-Circuit decisions.

Second, courts in the Ninth Circuit are generally more concerned about belated requests to transfer. Belated transfer requests that occur after an extended duration of the litigation may preclude an otherwise valid transfer. *See, e.g., Moore v. Telfon Communications Corp.*, 589 F.2d 959, 968 (9th Cir. 1978) (upholding the denial of a venue transfer motion under 1404(a) based on "the duration of the pendency of the litigation prior to the motion to transfer" among other considerations); *Davis v. Social Serv. Coordinators*, 2013 U.S. Dist. LEXIS 118414, 2013 WL 4483067, *30 (E.D. Cal. Aug. 16, 2013) ("The duration of the pendency of the litigation prior to the motion to transfer is another factor to be considered by the Court. . . ."). Therefore, Plaintiff's

argument that the Court should defer a decision on transfer until after significant discovery is completed is not persuasive.

### B. Plaintiff's Choice of Forum

Plaintiff's choice of forum is generally given great deference. Defendant Maxum, however, argues Plaintiff's choice of forum should be given little weight because (1) the Eastern District is not Plaintiff's home forum; (2) the subject collision and related litigation occurred within the Central District of California; and (3) the majority of witnesses will be within the Central District. (Doc. 5 at 6). In response, Plaintiff argues its choice of forum is entitled to "substantial deference' and should not be disturbed "based on Maxum's unjustified preference for the Central District." (Doc. 9 at 14).

Although a plaintiff's choice of forum ordinarily merits substantial weight, the Court finds that this factor does not significantly weigh in favor of Plaintiff here because Plaintiff is not a resident of this district. "The weight given to a plaintiff's choice is diminished when the plaintiff resides outside of the selected forum." *Marchioli v. Pre-Employ.com, Inc*., 2016 U.S. Dist. LEXIS 152901, 2016 WL 6522569, *6 (E.D. Cal. Nov. 2, 2016). Moreover, "a plaintiff's choice of forum 'is entitled to only minimal consideration' when the 'forum of original selection . . . has no particular interest in the parties or the subject matter.'" *Gemini Capital Group v. Yap Fishing Corp*., 150 F.3d 1088, 1091 (9th Cir. 1998).

Here, Plaintiff appears to have no regular or ongoing business contacts in this district and there appears to be no connection between the claims alleged and this forum. While Plaintiff chose this district as the forum for this lawsuit and, by its opposition to this motion, demonstrates a strong preference for this suit to be heard in this district, Plaintiff has failed to articulate a single reason for that preference. Because Plaintiff has chosen a forum that it has no connection to the claims, and there is no indication that the chosen forum is particularly convenient for Plaintiff, the Court gives little weight to Plaintiff's forum choice.

### C. Convenience of the Witnesses and Parties

In addition to considering Plaintiff's choice of forum, the Court must consider the relative convenience of the competing forums for all parties and witnesses. The convenience of witnesses

has been called the most powerful factor governing the decision to transfer a case. *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002). Defendant has identified eight third-party witnesses, all of whom reside in the Central District of California. (Doc. 12 at 4). Although the parties disagree as to who the relevant witnesses are in this case, there is a consensus that at least three of the eight proposed witnesses likely to provide relevant testimony include the two attorneys who defended Castillo in the underlying *Clark case,* attorneys: (1) Edward Leonard; (2) Zakiya Glass; and (3) Maxum's Corporate representative Richard Sforzo. (Doc. 9 at 10). Attorneys Leonard and Glass reside in the Central District. Richard Sforzo, Maxum's likely representative for trial, lives and works roughly 45 miles from Atlanta, Georgia. Declaration of Richard Sforzo ("Sforzo Decl."), ¶ 4, Doc. 5-2, Ex. G. Plaintiff's key witnesses: Ladanya Hermon and Michael Gearhart are former Maxum employees with last known addresses in the Atlanta, Georgia area. (Doc. 12 at 5).

While several witnesses reside in neither the Eastern nor the Central District, this factor still weighs in favor of transfer because this Court has recognized the convenience of the Central District over the Eastern District for out-of-state travelers. Multiple daily nonstop commercial flights travel between Atlanta and Los Angeles. Sforzo Decl. ¶ 4. There are however no commercial nonstop flights between Atlanta and Fresno. *Id.* Plaintiff's principal office is in Boston, Massachusetts. Compl. ¶ 1, Dkt. 1, p. 7. There are multiple daily nonstop commercial flights advertised between Boston and Los Angeles, and none between Boston and Fresno. Declaration of Ted Smith ("Smith Decl."), ¶ 25, Doc. 5-2, Ex. A. Additionally, travel to and from the Central District of California, which is served by three major airports, is more convenient for travel for any corporate representatives travelling to California for purposes of any mediation or trial. *Id.* Thus, the factor of convenience to the witnesses and parties weighs heavily in favor of transfer.

**D.    Other Factors**

As to the remaining factors and the interests of justice, each of these factors is either neutral or weighs in favor of transfer. For the factors of costs of litigation and the availability of compulsory process for non-party witnesses are concerned, the Central District is again a more

convenient venue. Should this action proceed to trial, both parties would incur travel and lodging expenses to produce some witnesses at trial and may have to introduce the deposition testimony of non-party witnesses if they are unwilling to appear in person. However, fewer people will have to travel and more people will fall within the subpoena power of the Court if this case is transferred to the Central District.

To the extent Plaintiff Lexington argues that the convenience of counsel weighs in favor of this district because that is where Plaintiff's counsel is located, the Court finds this factor is, at best, neutral. This Court has previously held that the location of counsel is a proper consideration in determining whether the transferor or proposed transferee court is the most convenient forum. *See Fenton v. McLane/Suneast, Inc.*, 2017 U.S. Dist. LEXIS 8385, 2017 WL 1356067, *4 (E.D. Cal. Jan. 20, 2017) (convenience of counsel considered where counsel for both parties was located in the Central District of California, and the potential for both of Plaintiff's actions to proceed in a single district would prevent all persons involved from having to travel to multiple venues within California.); *Fraser v. Genesco, Inc.*, 2011 WL 4566312, at *3 (E.D. Cal. Sept. 29, 2011). However, outside this District, the "great majority of cases" have deemed the location of counsel an irrelevant or improper factor or one that is deserving of little weight, "presumably because" the convenience of counsel is not a factor identified in Section 1404(a), many lawyers today practice on a national basis, . . . and local counsel usually is available to be present in court." *Wilson v. Walgreen Co.*, 2011 U.S. Dist. LEXIS 103929, 2011 WL 4345079, **14-16 (N.D. Cal. Sept. 14, 2011) (collecting cases and noting "it would be easy to manipulate venue simply by obtaining counsel in the venue of choice.). Here, Plaintiff's counsel is located in Fresno, California, but Defendant's counsel maintains multiple offices in the Central District (and none in the Eastern District). Smith Decl. ¶ 26. On balance, this convenience factor is a net neutral.

As to the ease of access to sources of proof, this factor favors transfer. The accident took place in the Central District. Subsequently, most of the challenged settlement negotiations happened in the Central District. Additionally, all of the California witnesses and most of the substantive events giving rise to the underlying action are located in the Central District. In

conceding that "some documentary evidence is located in the Central District" Plaintiff Lexington argues that "the current location of the original documents should not be sufficient to disturb [Plaintiff's] selected venue." (Doc. 9 at 26). Given the availability to transmit many documents electronically, the fact that much of the evidence is located in the Central District carries only minimal weight in favor of transfer. *Hansell v. TracFone Wireless, Inc.*, 2013 WL 6155618, at *4 (N.D. Cal. Nov. 22, 2013) ("When the evidence is in electronic form, this factor is neutral or carries minimal weight.").

Finally, Defendant Maxum accurately points out that the caseload of courts in the Central District is less than that of courts in the Eastern District. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc*., 2002 WL 32831640, at *12 (E.D. Cal. 2002) (explaining that "court congestion" is "another factor to be considered [but is] not the most important one"). In sum, most of the factors weigh in favor of transfer or are neutral. Thus, after careful consideration, the Court finds that transfer to the Central District of California is appropriate and would serve the convenience of the parties and witnesses, and promote the interests of justice.

**CONCLUSION**

For the reasons explained above, it is HEREBY ORDERED as follows:

1. Defendant Maxum Casualty Insurance Company's Motion to Change Venue is GRANTED; and
2. This action is transferred to the Central District of California.

IT IS SO ORDERED.

Dated: **June 19, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE